**United States Bankruptcy Court**
**Northern District of Illinois**
**Eastern Division**

**Transmittal Sheet for Opinions for Posting**

Will this opinion be Published?   **YES**

Bankruptcy Caption:  **Carlo M. Greco**

Adversary Caption:  **In re:  Joel Levin vs. Carlo M. Greco**

Bankruptcy No.  **08 B 03088**

Adversary No.  **08 A 00251**

Date of Issuance:  **November 20, 2008**

Judge: **Wedoff**

Appearance of Counsel:

Attorney for Joel Levin: **Neil P. Gantz, Neil Gantz Law Offices, Chicago, IL**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **Carlo M. Greco,** | ) | Case No. 08-B-03088 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ──────────────── | ) | |
| | ) | |
| **Joel Levin,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 08-A-00251 |
| | ) | |
| **Carlo M. Greco,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding, before the court on a motion for default judgment, raises the question of whether a debt owed to a "child representative" in an Illinois divorce case is a "domestic support obligation" under § 101(14A) of the Bankruptcy Code (Title 11, U.S.C.). a status that would make the debt nondischargeable under § 523(a)(5) of the Code.

The plaintiff in this proceeding, an Illinois child representative, asserts that fees he earned in that capacity are a domestic support obligation of the debtor. However, as discussed below, the plaintiff's fees cannot be a domestic support obligation because they are not, as required by § 101(14A), "owed to or recoverable by . . . a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or . . . a governmental unit." Accord-

2

ingly, the motion for default judgment will be denied and, unless the plaintiff can demonstrate other grounds for relief, the complaint will be dismissed for failure to state a claim on which relief can be granted.

**Jurisdiction**

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction of all cases under title 11 [the Bankruptcy Code]," but they may refer these cases to the bankruptcy judges for their districts under 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has made such a reference of its bankruptcy cases. N.D. Ill. Internal Operating Procedure 15(a). Pursuant to this reference, a bankruptcy judge has jurisdiction under 28 U.S.C. § 157(b)(1) to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." A proceeding to determine the dischargeability of debt is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

**Factual Background**

Carlo M. Greco, the defendant in this adversary proceeding, filed his Chapter 7 bankruptcy in February 2008. Greco had previously been involved in a divorce action in the Circuit Court of Cook County, Illinois. In the divorce action, Joel Levin, the plaintiff in the adversary proceeding, was appointed "child representative" for Greco's children. In that capacity, Levin consulted with Greco, his then-wife, and his children, and Levin appeared in the circuit court on matters concerning the children's custody and welfare. As part of a settlement in the divorce case, Greco agreed to pay Levin $8,927.25 for Levin's work as child representative, and the agreement was incorporated into an order issued by the circuit court. The circuit court also or-

3

dered Greco's wife to pay Levin a smaller amount. Greco did not pay the full amount for which he was responsible before his bankruptcy filing, and in the bankruptcy case, he scheduled an undisputed debt to Levin in the amount of $8,365.

On May 2, 2008, Levin filed an adversary complaint to determine the dischargeability of Greco's outstanding obligation. Greco was served with the complaint but has not answered or otherwise appeared in the adversary proceeding, and Levin has moved for a default judgment, asserting that the debt is a domestic support obligation, non-dischargeable under § 523(a)(5). In considering this motion, the court questioned whether Levin's status as a child representative under Illinois law gave rise to a domestic support obligation as a matter of law and gave Levin the opportunity to brief the issue.

**Legal Analysis**

Although Greco has not responded to the adversary complaint, a default judgment against him is not automatic. Rather, the granting of a default judgment is discretionary, and the court may take into consideration, among other factors, the merits of the complaint. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); *In re Franklin*, 210 B.R. 560, 562 (Bankr. N.D. Ill. 1997) ("The granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion.").

The merits of Levin's complaint depend on § 523(a)(5) of the Code, which excepts from discharge any debt for a "domestic support obligation." "Domestic support obligation," in turn, is defined in § 101(14A) of the Code:

4

> The term "domestic support obligation" means a debt . . . that is—
>
>     (A) owed to or recoverable by—
>         (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>         (ii) a governmental unit;
>
>     (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
>     (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>         (i) a separation agreement, divorce decree, or property settlement agreement;
>         (ii) an order of a court of record; or
>         (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
>     (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

This definition sets out four elements that must be satisfied for a domestic support obligation to arise: (1) the *payee* of the obligation be either a governmental unit or a person with a particular relationship to the debtor or to a child of the debtor, as defined in paragraph (A); (2) the *nature* of the obligation must be support, as defined in paragraph (B); (3) the *source* of the obligation must be an agreement, court order, or other determination, as defined in paragraph (C); and (4) the *assignment status* of the obligation must be consistent with paragraph (D). *See Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 613 (E.D. Wis. 2008) ("The definition [in § 101(14A)]

5

has four separate requirements; all four must be met for an obligation to be considered a domestic support obligation.").[1]

The allegations of Levin's complaint satisfy all but the first element. Payment for the services that Levin provided to Greco's children can be characterized as "support" for the children and so included within § 101(14A)(B), particularly given the broad interpretation of support under § 523(a)(5). *See In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998) (holding that the usual strict construction of exceptions to discharge is not applicable to support obligations, in light of a "longstanding . . . policy of protecting a debtor's spouse and children when the debtor's support is required."); *In re Ramirez*, No. 99 B 22274, 2000 WL 356314, at *5 (Bankr. N.D. Ill. Feb. 7, 2000) (noting "that the great majority of cases decided under § 523(a)(5) hold that guardian ad litem fees incurred in child custody proceedings are in the nature of support . . . ."). Because the obligation to Levin arises under a settlement agreement incorporated in a divorce decree and has not been assigned, it also satisfies the requirements of § 101(14A)(C) and (D).

---

[1] This bankruptcy case is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which applies to cases filed on or after October 17, 2005. For cases filed before that date, a pre-BAPCPA version of § 525(a)(5) was applicable. It did not use the term "domestic support obligation," but did include language addressing the four elements of the domestic support obligation definition of the current law. Specifically, the pre-BAPCPA version of § 525(a)(5) excepted from discharge any debt "[1] to a spouse, former spouse, or child of the debtor, [2] for alimony to, maintenance for, or support of such spouse or child, [3] in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, [4] but not to the extent that . . . such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State) . . . ." Accordingly, case law interpreting the former version of § 523(a)(5) remains relevant here.

6

It does not appear, however, that Levin, as a child representative, satisfies the requirement of § 101(14A)(A) that he be a payee within that paragraph's definition. To the contrary, none of the arguments regarding § 101(14A)(A), whether made by Levin or otherwise suggested, shows that the payee requirement has been met.

1. *Section 101(14A)(A) must be given effect.*

Levin's principal argument is that because his services to Greco's children were in the nature of support, Greco's obligation to pay for those services must be nondischargeable. This argument has some support in decisions construing the pre-BAPCPA version of § 523(a)(5). A number of these decisions appear to hold that if a debtor in bankruptcy has been ordered by a divorce court to pay a debt in the nature of support, it does not matter to whom the debt is payable. For example, *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir. 1993), held nondischargeable under § 523(a)(5) an award of fees to a guardian ad litem appointed to represent the interest of the debtor's child in a custody dispute. The court did not address the payee requirement. Rather, it held simply: "Because the fees charged by [the guardian ad litem] were incurred during a court hearing that was for [the child's] benefit and support, and because the state court then ordered the fees to be paid by [the debtor], we conclude that the fees constitute a nondischargeable debt under § 523(a)(5)."[2] Similar decisions are collected in *Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini)*, 365 B.R. 251, 255 (Bankr. S.D. Fla. 2007).

---

[2] The failure of the *Dvorak* decision to consider the status of the payee was not simply an oversight. A later decision, *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 357 (5th Cir. 1997), expressly rejected an argument that a support obligation was dischargeable because it was not payable to a party specified by § 523(a)(5), citing *Dvorak* for the proposition that "[o]ur precedent precludes this argument."

7

These decisions, however, are not well grounded. Even under the former version of § 523(a)(5), the provision that an obligation be owed "to" a specified payee was an essential element of nondischargeability, distinct from the requirements that the obligation be in the nature of support. See *Gentilini*, 365 B.R. at 255-58 (discussing the language and legislative history of § 523(a)(5)). Under BAPCPA, the payee requirement is even more clearly set out, as separate paragraph (A) in the § 101(14A) definition of domestic support obligation. The requirement of that paragraph that an obligation be "owed to or recoverable by" a specified payee must be honored as a matter of basic statutory construction. See *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004) ("We must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous.").

Moreover, the payee requirement is an entirely reasonable legislative determination to limit the type of support obligations that are excepted from a debtor's discharge. Section 101(14A)(A) distinguishes between one group of payees—including those for whom the debtor has a direct support obligation (children, spouse, former spouse) and those who have a long term responsibility for the direct support recipients (parent of the child, responsible relative, governmental unit)—and another group of payees whose contribution to the directly supported parties is less extensive. Congress could certainly determine that the first group had a special need for payment from the debtor, sufficient to justify limiting the fresh start that the debtor would otherwise have on emergence from bankruptcy, while the need for payment to creditors in the second group was not so pressing. Thus, even though a state court might have ordered a debtor in bankruptcy to pay creditors in the second group for obligations in the nature of support—for example, a doctor who treated the debtor's spouse, a landlord who provided rental property that

8

housed the debtor's family, or a grocer who provided food to the debtor's children—the debtor's bankruptcy discharge would encompass those debts because the payees are not specified in § 101(14A)(A). *See Shaver v. Forgette (In re Forgette)*, 379 B.R. 623, 625-26 (Bankr. W.D. Va. 2007) (holding that a court-ordered payment to a car dealer for a vehicle used by the debtor's wife was not a domestic support obligation).

Contrary to Levin's argument, then, his right to payment from the debtor is not within the scope of §§ 101(14A) and 523(a)(5) simply because it is a court-ordered payment in the nature of support.

2. *The claim of a child representative is not owed to or recoverable by the debtor's spouse.*

Levin cites a pair of decisions imposing nondischargeability under § 523(a)(5) on a debtor's obligation to pay the fees of a divorce attorney for the debtor's spouse. Levin then asks, "If the courts have decided that attorney fees for representing the wife in divorce proceedings were non dischargeable [sic], how can fees for representing the children be otherwise?" (Memorandum of Law in Support of Motion for Default Judgment, Adversary Docket No. 6, at 2.) There are two answers to this question. One of the decisions cited by Levin, *Pauley v. Spong (In re Spong)*, 661 F.2d 6 (8th Cir. 1981), is among those that improperly ignore the payee requirement. *See Spong*, 661 F.2d at *11 (Lunbard, J., dissenting) (criticizing the majority for finding the payee requirement of "no moment"). As discussed above, decisions of this sort do not provide a proper basis for interpreting § 101(14A).

The other decision Levin cites, *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir. 1983), has a different rationale. It is among a group of decisions finding that a debtor's obli-

9

gation to pay his spouse's attorney was in effect a debt "payable to" the spouse, thus satisfying the payee requirement. *See Williams*, 703 F.2d at 1057 n.3, noting that the debtor's obligation was to pay fees to his spouse "for the benefit of her attorney" and that if he failed to do so she would "remain liable" to the attorney—apparently because of a personal, contractual obligation to pay the attorney. *In re Gentilini*, 365 B.R. at 254-55, cites other decisions similarly holding that "a right of payment to a third party [is] deemed to be in substance a right of payment to a former spouse where the effect of the discharge would be to make the former spouse liable to that third party."

The payee requirement of § 101(14A)(A) follows this case law by including not only obligations "payable to" but also "recoverable by" a former spouse. Thus, if a debtor's spouse were required to pay attorney's fees because the debtor failed to make a court-ordered payment, the spouse would likely have a right to recover those fees from the debtor, satisfying the payee requirement. *See In re Poole,* 383 B.R. 308, 313 (Bankr. D.S.C. 2007) (holding that under § 101(14A)(A), "debts to be paid directly to third parties such as the attorney's fees . . . would not necessarily be excluded if they are enforceable and recoverable by the spouse via further proceedings . . . .").

This case law, however, is inapplicable here. Greco's former spouse has no obligation to pay any portion of Levin's fee for which the circuit court's order makes Greco liable. Under Illinois law, the obligation to pay fees of a child representative is established exclusively by a court order that "shall require payment by either or both parents, by any other party or source, or from the marital estate for the child's separate estate." 750 ILCS 5/506(b) (2008). The circuit court's order in Greco's divorce action provides for separate amounts to be paid to Levin by

10

Greco and his former spouse; it places no obligation on either party to satisfy the other party's payment obligation. Greco's obligation to pay Levin, then, is personal to Greco alone; it is neither indirectly "payable to" nor "recoverable by" Greco's former spouse or any of the other parties specified in § 101(14A)(A).

      3. *A child representative is not a "legal guardian."*

Although Levin does not make the argument, it might be questioned whether, as a "child representative" under Illinois law, he would qualify as a "legal guardian"—one of the payees specified in § 101(14A). He would not. Courts are required to interpret statutory language according to its ordinary meaning, *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson,* 238 F.3d 891, 897 (7th Cir. 2001), and the ordinary meaning of "legal guardian of a child" is a person appointed by a court to have custody of and general responsibility for the child. *See, e.g., State of California Dep't of Soc. Services v. Thompson,* 321 F.3d 835, 838 (9th Cir. 2003) (describing parents and legal guardians as those adults who have legal custody of the child); *In re Adoption of M.J.C.*, 590 N.E. 2d 1095, 1100 (Ind. App. 1992) (holding that "as legal guardian . . . the grandmother had all the responsibilities and authority of a parent . . . ."); 18 U.S.C.A. § 2251A (2001) (prohibiting a "parent, legal guardian, or other person having custody or control of a minor" from involving the child in pornography); Mass. Gen. Laws Ann. ch. 112 § 12F (2008) ("No physician, dentist, or hospital shall be held liable for damages for failure to obtain the consent of a parent, legal guardian or other person having custody or control of a minor child . . . ."); 105 ILCS 5/26-3b (2008) (requiring that Illinois public schools notify "the parent, legal guardian or other person having legal custody of the child" when a child is absent from school); 720 ILCS 150/5.1 (2008) ( a sex-abuse provision defining the "person responsible for the child's welfare" to mean

11

"the child's parent, step-parent, legal guardian, or other person having custody of a child, who is responsible for the child's care . . . .").

An interpretation of "legal guardian" in § 101(14A)(A) to involve custody and general care of a child is also required by the principle of *noscitur a socilis*, or "it is known from its associates,"—the "familiar principle of statutory construction that words grouped in a list should be given related meaning." *Third Nat'l Bank in Nashville v. Impac Ltd., Inc.,* 432 U.S. 312, 322 (1977). Under this principle, the meaning of the term "legal guardian" in § 101(14A(A) can be ascertained "by reference to the meaning of words or phrases associated with it." *United States v. Schuster*, 467 F.3d 614, 620 (7th Cir. 2006). In § 101(14A)(A), the words associated with "legal guardian" are "parents" and "responsible relatives," both of whom have custody and general responsibility for the children under their care. "Legal guardian," then, should be similarly interpreted.

In contrast to a legal guardian, a "child representative" under Illinois law has neither custody nor general responsibility of children. Rather, the position of child representative, like that of guardian ad litem, is simply an appointment that an Illinois court may make to advance the interests of children within a particular legal proceeding, limited to decisions made in that proceeding.[3] Levin, as child representative, did not have custody or general responsibility for the

---

[3] An Illinois court may appoint either an attorney for the child, a guardian ad litem, or a "child representative" to advance the interests of a child in a support or custody proceeding. 750 ILCS 5/506(a) (2008). Much of the work involved in these appointments overlaps, but all of it takes place within the framework of the legal proceeding in which the appointment is made. A child's attorney is to "provide independent legal counsel for the child and shall owe the same duties of undivided loyalty, confidentiality, and competent representation as are due an adult client." 750 ILCS 5/506(a)(1) (2008). A guardian ad litem is required to "investigate the facts of the case and interview the child and the parties" and then "testify or submit a written report to the

12

care of Greco's children. Hence, Greco's obligation to pay Levin is not an obligation payable to a "legal guardian."

4. *A child representative is not a "governmental unit."*

Levin's Additional Memorandum of Law [in] Support of Motion for Default Judgment concludes with the contention that pursuant to his appointment as child representative, Levin became a governmental unit "as set forth in [§ 101(14A)](A)(ii)." (Adversary Docket No. 9 at 2.) Levin's counsel later indicated orally that he would not pursue this argument, apparently recognizing that the Bankruptcy Code itself defines "governmental unit" in a way that does not include individuals.[4]

Nor can it be said that Levin was acting as the agent of the circuit court, which could be a "governmental unit." Levin's actions as child representative were not directed by the court as his principal. *See In re Benalcazar*, 283 B.R. 514, 532 (Bankr. N.D. Ill. 2002) (suggesting that "a private individual or organization pursuing Rule 11 sanctions cannot be an 'agent' of the court"). Rather, Levin exercised independent professional judgment in carrying out the duties of a child

---

court regarding his or her recommendations in accordance with the best interest of the child," subject to examination as a witness. 750 ILCS 5/506(a)(2) (2008). A child representative has "the same authority and obligation to participate in the litigation as does an attorney for a party [with authority to 'offer evidence-based arguments'] and shall possess all the powers of investigation as does a guardian ad litem," but "shall not render an opinion, recommendation, or report to the court and shall not be called as a witness." 750 ILCS 5/506(a)(3) (2008). None of the appointments involve custody of children or responsibility for their general welfare.

[4] Section 101(27) of the Code states: "The term 'governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government."

13

representative defined by the Illinois statute, and any payment he received for those services would belong to him personally, not to any unit of government.

    5. *Illinois law cannot determine dischargeability under the Bankruptcy Code.*

    Finally, Levin argues in his Additional Memorandum of Law (Adversary Docket No. 9 at 2) that the bankruptcy court may "be guided and informed by the law of the state governing divorce" and he points to a provision of the Illinois Marriage and Dissolution of Marriage Act stating that "all fees and costs payable to an attorney, guardian ad litem, or child representative . . . are by implication deemed to be in the nature of support of the child and are within the exceptions to discharge in bankruptcy under 11 U.S.C.A. 523." 750 ILCS 5/506(b) (2008). However, the Supremacy Clause, U.S. Const. Art. 6, precludes any argument that state statutes can override acts of Congress, and this is particularly true for bankruptcy, as to which Congress is given authority to enact "uniform Laws." *Id.* Art. I, § 8, cl. 4. Accordingly, "[a] state is without power to make or enforce any law governing bankruptcies that . . . conflicts with the national bankruptcy laws." *International Shoe Co. v. Pinkus*, 278 U.S. 261, 263-64, 49 S. Ct. 108, 109-10 (1929).

    As discussed above, § 101(14A)(A) limits the domestic support obligations nondischargeable under § 523(a)(5) of the Bankruptcy Code to obligations owed to or recoverable by specified parties—those whom the debtor is directly required to support and those who provide ongoing care to them. Child representatives are not among the parties specified by § 101(14A)(A), and so amounts payable to them are not nondischargeable domestic support obligations. State law cannot validly provide for a different result. *See Hansel v. Hansel (In re Han-*

14

*sel)*, No. 92 C 1095, 1992 WL 280799, at *3 (N.D. Ill. Oct. 2, 1992) (rejecting a state statute's definition of "support" for purposes of § 523(a)(5)).

## Conclusion

For the reasons stated above, Levin's motion for default judgment will denied. Because it appears that Levin's complaint fails to set out grounds on which relief can be granted, the court will consider dismissing the adversary proceeding after providing an opportunity to Levin to demonstrate that the complaint is viable. *See Stewart Title Guar. Co. v. Cadle Co.*, 74 F.3d 835, 836-37 (7th Cir 1996) (prescribing the proper procedure for *sua sponte* dismissal on grounds of failure to state a claim).

Dated: November 20, 2008

Eugene R. Wedoff
United States Bankruptcy Judge